IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JEREMY JOHN BRAULICK,<br><br>Plaintiff,<br><br>vs.<br><br>STEVE BULLOCK, et al.,<br><br>Defendants. | CV-19-00070-H-DLC-JTJ<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Jeremy Braulick, a state prisoner proceeding without counsel, filed a Motion to Proceed in Forma Paupers (Doc. 1) and a proposed Complaint pursuant to 42 U.S.C. § 1983 alleging he was denied adequate medical care while incarcerated at the Crossroads Correctional Center and at Montana State Prison (Doc. 2). The Court will grant the motion to proceed in forma pauperis, but the Complaint fails to state a federal claim upon which relief may be granted and should be dismissed. Mr. Braulick's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4) should be denied.

## I. MOTION TO PROCEED IN FORMA PAUPERIS

Mr. Braulick's Motion to Proceed in Forma Pauperis and account statement are sufficient to make the showing required by 28 U.S.C. § 1915(a). (Doc. 1.) The Court will grant the request to proceed in forma pauperis but since Mr. Braulick is a prisoner, he must still pay the statutory filing fee of $350.00. 28 U.S.C. §

1

1915(b)(1). The Court will waive the initial partial filing fee required under 28 U.S.C. § 1915(b)(1) because Mr. Braulick submitted an account statement showing an inability to pay that fee. *See Bruce v. Samuels*, 136 S.Ct. 627, 629 (2016)("the initial partial filing fee may not be exacted if the prisoner has no means to pay it, § 1915(b)(4)"). Mr. Braulick may proceed with the case but he must pay the full filing fee in installments and make monthly payments of 20% of the preceding month's income credited to his prison trust account. The percentage is set by statute and cannot be altered. 28 U.S.C. § 1915(b)(2). Mr. Braulick must make these monthly filing-fee payments simultaneously with the payments required in any other cases he has filed. *Id.*

By separate order, the Court will direct Montana State Prison to forward payments from Mr. Braulick's account to the Clerk Court each time the account balance exceeds $10.00, until he has paid the filing fee in full. 28 U.S.C. §1915(b)(2).

## II. STATEMENT OF THE CASE

### A. Parties

Mr. Braulick is a state prisoner currently incarcerated at Montana State Prison in Deer Lodge, Montana. Some his claims, however, arose during his incarceration at Crossroads Correctional Facility. He names twenty-seven Defendants from Montana State Prison and Crossroads. (Complaint, Doc. 2 at 10.)

### B. Allegations

Mr. Braulick alleges Defendants have not provided him with adequate medical care for his hypothyroidism condition. (Complaint, Doc. 2.) Specifically, he contends he has hyperthyroidism and possibly other medical conditions and issues. He complains that Defendants have not provided him with a specific medication for his issues and have not sent him to see a second endocrinologist. In his request for a preliminary injunction he seeks an order requiring Defendants to acknowledge his complaints about his ongoing worsening hypothyroid symptoms, to test him for Thyrotropin-binding inhibitory immunoglobulin Abs and for any other Abs that might reflect this TSH inhibitory immunoglobulin/thyrotropin receptor-blocking Abs if any and/or for any other thyroid Abs that might interfere with thyroid lab results, find the reason why he has Atrophic thyroiditis, start looking further for the root cause to why he is having the hypothyroid symptoms, find the root cause for his abnormal blood tests, and arrange for him to be examine by Dr. Nancy Eyler, an endocrinologist in Missoula. (Doc. 4-4 at 2-3.)

### III. SCREENING STANDARD

Mr. Braulick is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. § 1915 and § 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability,"

4

or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id. citing* Fed.R.Civ.P. 8(a)(2). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## IV. SCREENING ANALYSIS

### A. Eighth Amendment Denial of Medical Care Standard

In order to state a § 1983 claim for violation of the Eighth Amendment

based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, Mr. Braulick must allege both that his medical needs were objectively serious, and that Defendants possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Wood v. Housewright*, 900 F.2d 1332, 133741 (9th Cir. 1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200–01 (9th Cir. 1989); *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Once there is a showing of a serious medical need, a plaintiff must show that

defendants were deliberately indifferent to that need. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. *Farmer*, 511 U.S. at 835. Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

### 1. Serious Medical Needs

The Court will assume for purposes of this Order, that Mr. Braulick has serious medical needs. He has not however, provided sufficient factual allegations to plausibly suggest that any named Defendant was deliberately indifferent to those needs. Because of Mr. Braulick's multitude of medical issues, he presents what

appears to be a difficult medical case to monitor and treat. The records attached to the Complaint and Mr. Braulick's detailed description of the medical treatment he has received confirm that prison medical staff have attempted to treat and monitor Mr. Braulick's medical conditions. Although it may not be the care Mr. Braulick desires, there are insufficient factual allegations to plausibly suggest that any named defendant was deliberately indifferent to Mr. Braulick's serious medical needs.

### 2. Claims arising prior to October 4, 2016

Mr. Braulick provides an extensive description of his medical conditions going back to around 2012. But all claims arising prior to October 4, 2016 will not be considered herein as they are barred by the applicable statute of limitations. The United States Supreme Court in *Wilson v. Garcia*, 471 U.S. 261 (1985), determined the applicable statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the state statute of limitations governing personal injury actions. In Montana, that period is three years after the action accrues. Mont. Code. Ann. § 27-2-204(1).

Mr. Braulick's Complaint was signed on October 4, 2019, therefore all claims accruing prior to October 4, 2016 are barred by the applicable statute of limitations.

Mr. Braulick was sent to Montana State Prison from Crossroads on April 26,

2016. Since Mr. Braulick has been incarcerated at MSP since April 26, 2016, his claims arising while he was at Crossroads are now barred by the applicable statute of limitations and should be dismissed. This includes the dismissal of Defendants CoreCivic, Douglas Fender, Acel Thacker, Christopher Rost, Heather Sand, Kyle Nasreen, Joseph Berdecia, Martha Dobbins-Odegard, and William Pearson.

### 3. Deliberate Indifference

#### a. Allegations

Mr. Braulick has detailed the treatment he has received since 2016 and has not plausibly shown that any named defendant was deliberately indifferent to his serious medical needs. The medical records and description of the medical care Mr. Braulick indicate that he has been on the medication levothyroxine for his thyroid condition since at least March 7, 2014. Dr. Brian Robinson, an endocrinologist from St. Peter's Medical Group, examined Mr. Braulick on November 29, 2016 for an evaluation of his thyroid. Dr. Robinson provided the following history of Mr. Braulick's complaints:

> This patient is here today for the evaluation of his thyroid and a possible thyroid nodule. The patient states that he was diagnosed with hypothyroidism in 2012 and has been given a lot of confusing information. Patient states that originally when he was put on 50 mg of levothyroxine his symptoms of dry skin and fatigue and muscle weakness went away. The patient states that even after increasing the dose his symptoms have returned and the patients feels like his thyroid is messed up. Currently the patient has similar symptoms and

9

> states that he has the fatigue and low muscle mass when working out. The patient does state that he has low sexual drive. The patient states that he takes his thyroid medication every day. Laboratory from the infirmary show that his TSH, free T4 and free T3 are all normal. Patient states that he feels like he has a pituitary problem and that his pituitary doesn't make adequate TSH. His last TSH was normal. On history the patient states that he had a TSH that was elevated at the time of his original diagnosis. Patient feels like that the prolactin levels been abnormal. The prolactin that I have is in the normal range. He denies any breast discharge or breast tenderness but he does have this decreased libido.

(Doc. 2-7 at 5.) Dr. Robinson "tried repeatedly to explain to [Mr. Braulick] that with his normal tsh, free t4 and t3 levels that his does of levothyroxine is just great." (Doc. 2-7 at 4.) Despite this finding, Mr. Braulick contends the visit was a farce because MSP staff did not make sure Dr. Robinson had his important current medical records and Dr. Robinson did not appear to be listening to Mr. Braulick. (Complaint, Doc. 2-2 at 24.)

Prior to seeing Dr. Robinson, PA Griffin requested an MRI on Mr. Braulick's brain/pituitary due to his elevated prolactin levels which was granted on December 1, 2016. The MRI was done on January 5, 2017 and came back negative showing everything was normal. (Complaint, Doc. 2-2 at 26.)

On December 19, 2016, Mr. Braulick met with PA Griffin and Dr. Rees. Mr. Braulick explained to these medical providers in detail all the symptoms he had been suffering for many years. Dr. Rees indicated that TBII ABS interfere with "thyroid lab results" but he did not put Mr. Braulick down to be tested for

10

TBII Abs since he was getting ready to have the MRI. (Complaint, Doc. 2-2 at 30.)

Mr. Braulick had a test on February 9, 2017 that showed his eosinophils were still high. A test on February 13, 2017 showed that his prolactin was mildly high. On February 27, 2017, he met with Dr. Rees and discussed the thyroid ABS TBII that interfere with thyroid lab results. (Complaint, Doc. 2-2 at 31.)

Mr. Braulick met with Dr. Rees on June 15, 2017 and contends Dr. Rees was rude at the visit. (Complaint, Doc. 2-2 at 31.) On June 30, 2017, Mr. Braulick filed a grievance asking to be tested for the Abs that interferes with thyroid lab results/TSH causing faulty readings that Dr. Rees told him about. His grievance was denied on November 2, 2017. In his grievances, Mr. Braulick described in detail how he is suffering from hypothyroid symptoms despite his normal thyroid lab results and that they were denying him the many blood tests that could help prove that he still has hypothyroidism, but they denied it. (Complaint, Doc. 2-2 at 32-33.)

On March 21, 2018, Mr. Braulick saw N.P. Cozby for a rash on his hand and told her about his ongoing hypothyroid symptoms. She told him that she would put him down to be tested for these TBII Abs and three other tests but she never did. (Complaint, Doc. 2-2 at 33.)

On May 29, 2018, Mr. Braulick saw Dr. Thomas who went over test results

with him that had been done on April 9, 2018.  The tests were ANA, ESR and PSA which were all normal.  His TPO Abs were norm but his thyroglobulin Abs were barely high.  Dr. Thomas wrote Mr. Braulick down to be tested for these TBII Abs on May 29, 2018.  (Complaint, Doc. 2-2 at 33-34.)

He contends they have still not tested him for these TBII Abs that interfere with thyroid lab results.  (Complaint, Doc. 2-2 at 36.)

On June 18, 2018, Mr. Braulick saw Dr. Rees to go over the test results Dr. Thomas had ordered on May 29, 2018.  (Complaint, Doc. 2-2 at 36.)

Mr. Braulick saw Dr. Hurst on August 10, 2018 for some symptoms he kited them about and he explained his thyroid issues he had been dealing with.  Dr. Hurst told him that his thyroid Abs were barely high and did not seem to be much of an issue.  Dr. Hurst recommended Mr. Braulick talk to mental health which upset Mr. Braulick because he did not give him permission to talk to mental health about his problems.  (Complaint, Doc. 2-2 at 37.)

On December 20, 2018, Mr. Braulick saw NP Cozby who told him the TBII Abs test was not done.  (Complaint, Doc. 2-2 at 39.)  On January 30, 2018, Mr. Braulick kited the infirmary about his dry skin and some dry scabby itchy bumps on his hands.  On March 26, 2018, he kited about some joint pain in his left thumb that had been going on for 6-7 months.  He kited the infirmary on July 24, 2018 about some ringing in his ears especially his left ear that woke him up in the

middle of the night. He contends hearing loss is a sign of hypothyroidism. He also contends his heart rate is around 50 bpm. (Complaint, Doc. 2-2 at 40.)

Mr. Braulick contends he had two tests done in 2017 and 2018 which showed that his health is only getting worse. He contends his "Bun/Creatinine Ratio" came back low on October 30, 2017 and September 27, 2028 which can be a sign of a pituitary dysfunction or a pituitary hormone imbalance. Despite these tests, prison medical staff have failed to do further testing to find out why. He claims his GFR tests show that he has "mild kidney damage". He also claims his prolactin tests have been high. (Complaint, Doc. 2-2 at 41.)

### b. Analysis

Mr. Braulick has detailed the medical treatment he has received and the testing that has been done. Despite the opinions of numerous doctors, Mr. Braulick insists that there is more going on with his medical condition and additional tests should be done. Specifically he contends, "there are things they can do to help improve/alleviate Braulick's ongoing htd symptoms and since thyroid lab results can be normal despite still being htd they need to consider and acknowledge his complaints about his htd symptoms especially when he has other peripheral blood tests to help that he is still htd and is not making them up." (Complaint, Doc. 2-2 at 43.)

At most, Mr. Braulick has alleged a difference of opinion about the best way

to treat his medical conditions which is insufficient to state a claim for deliberate indifference.  *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim."); *see also Shiira v. Hawaii*, 706 Fed. Appx. 436 (2017)(affirming summary judgment for defendants who deprived plaintiff of methadone and Percodan but offered over-the-counter pain medication and treatment for potential detoxification symptoms; plaintiff's expert did not testify that offering alternative pain medications would be medically inappropriate); *Fausett v. LeBlanc*, 553 Fed.Appx. 665 (9th Cir. 2014) (affirming summary judgment for defendants where doctors did not provide Valium ordered in hospital-discharge instructions after spinal-fusion surgery and instead provided substitute medicine and other pain medications); *Gauthier v. Stiles*, 402 Fed.Appx. 203 (9th Cir. 2010) (affirming dismissal; plaintiff's disagreement with the dosage and type of pain medication administered after surgery not deliberate indifference).

Mr. Braulick's suggestion that he is being denied further diagnostic tests is also insufficient to state a claim.  As the United States Supreme Court stated in *Estelle*, "the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not

14

represent cruel and unusual punishment. At most it is medical malpractice." *Estelle*, 429 U.S. at 107.

Mr. Braulick is being treated with medication, he has been taken for outside consults, he had an MRI, and he has frequent blood tests. His allegations that Defendants are being deliberately indifferent to a serious medical need stops short of the line between probability and the possibility of relief because at the alleged facts are at the most merely consistent with a defendant's liability. *Iqbal*, 556 U.S. at 678.

Mr. Braulick's allegations are insufficient to state a denial of medical care claim and should be dismissed. For these same reasons, his motion for preliminary injunction and temporary restraining order should be denied.

Based on the foregoing, the Court issues the following:

## ORDER

1. Mr. Braulick's Motion to Proceed in Forma Pauperis (Doc. 1) is granted.

2. The Clerk shall remove the word "LODGED" from the docket entry for the Complaint. (Doc. 2). The Complaint is deemed filed on October 11, 2019.

3. At all times during the pendency of this action, Mr. Braulick must immediately advise the Court and opposing counsel of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1. Mr. Braulick's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4) should be DENIED and this matter should be DISMISSED for failure to state a claim.

2. The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

4. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g).

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Braulick may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[1] Mr. Braulick is entitled an additional three (3) days after the period would otherwise expire.

16

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 7th day of April, 2020.

                                               */s/ John Johnston*
                                               John Johnston
                                               United States Magistrate Judge